[No. 15861. Department Two. July 28, 1920.]

EBB SCHROCK, *Appellant,* v. E. F. SCHROCK,
*Respondent.*[1]

COMPROMISE AND SETTLEMENT (9) — EVIDENCE — SUFFICIENCY. A
final settlement and adjustment of all matters relating to certain
trades in real estate is sufficiently shown by evidence that plaintiff
was paid sums for his services in making the trades and for ex-
penses incurred in farming the land before the first trade, and
that thereafter in an action against the defendant brought by a
third party claiming a large sum due him in the transaction, the
plaintiff positively testified that the sums paid him were given in
full and final settlement of all that was due, although now testifying
that part of the sums paid was an advance merely, and that there
was a mutual mistake in failing to consider certain payments and
personal property involved in the transaction.

Appeal from a judgment of the superior court for
Okanogan county, Carey, J., entered July 10, 1919,
upon findings in favor of the defendant, in an action
on contract, tried to the court. Affirmed.

*F. K. P. Baske,* for appellant.

*Danson, Williams & Danson* (*R. E. Lowe,* of coun-
sel), for respondent.

TOLMAN, J.—Appellant, who was plaintiff below, is
a nephew of the respondent, and sues to recover one-
half of the profits which he alleges accrued from cer-
tain trades in real estate. From a judgment denying
him any recovery, he appeals.

As we see it, the questions involved are of fact only,
and the following is either admitted or fairly estab-
lished by the evidence:

In 1914, respondent owned a large tract of land in
Adams county, Washington, subject to a mortgage for
$30,000, which had theretofore been farmed unprofit-

[1]Reported in 191 Pac. 768.

ably by another nephew, W. D. Schrock. In March
of that year, appellant proposed, and respondent
agreed, that appellant should go upon the land, care
for and farm it, out of the proceeds pay the interest
on the mortgage, retaining the remainder of the in-
come for himself, and that he should sell or trade the
land, when opportunity offered, for as much as pos-
sible above the mortgage debt. Appellant contends
that, in the event of sale, it was agreed that the amount
realized above the mortgage should be divided equally
between them; while respondent denies any such agree-
ment, and contends that, while it was understood that
appellant should be compensated if he brought about
a sale or exchange, no percentage or amount was
named or agreed upon.

Appellant purchased from respondent the live stock,
machinery and tools on the place for $6,400, and paid
therefor by executing deeds to certain lands, valued at
$3,000 more than the purchase price of the personal
property. These deeds do not appear to have been
delivered, but were placed in a bank, presumably to
be delivered when respondent paid the $3,000 boot
money. Following the making of these arrangements,
appellant went upon the land and proceeded to put in
a crop and to summer-fallow, at an expense of ap-
proximately $3,000. Thereafter in May of the same
year, with the consent and approval of respondent,
appellant traded the equity in the Adams county land,
and the personal property used in connection there-
with, for an equity in a tract of land in Montana, pay-
ing a bonus on the trade of $5,000 in cash, which was
supplied by respondent. Respondent then surrendered
to appellant the deeds in escrow of the land which had
figured in the purchase of the personal property
(never having paid the $3,000 boot money on that

transaction), and thereafter another trade was made through the efforts of appellant by which the Montana land was exchanged for land in Lincoln county, Washington, which was subject to a mortgage of upwards of $25,000. Title to the Lincoln county land was vested in respondent, who purchased and paid for certain personal property thereon and entered into exclusive possession.

In November, 1914, the parties made some kind of an adjustment which respondent contends was a final settlement of all of these matters, in which $6,000 was allowed for appellant's services in making the two exchanges, and $1,800 was added thereto, as respondent claims, for the $3,000 expended by appellant in putting in the crop and summer fallowing the Adams county land before the first trade, less $1,200, interest on the mortgage on that land, which by agreement appellant should have paid, and a note for $7,800; the amount thus arrived at was given by respondent to appellant, which was afterwards admittedly paid.

Appellant made no further claims for some years thereafter, during which time the other nephew, W. D. Schrock, waged an unsuccessful action against the mutual uncle for a large sum claimed to be due him in the transaction, upon the trial of which case appellant testified squarely, upon apparently full understanding of all the facts, that the $7,800 note, heretofore referred to, was given to him in full and final settlement of all that was due him in this transaction. He now testifies and strenuously contends that the $6,000 included in the $7,800 note, for his services, was an advance only; that it was then agreed that the remainder of his half of the profits should be paid when the Lincoln county land was sold, and ingeniously, we think, he attempts to explain away certain matters and ad-

vances the theory that the personal property included in the first trade was his, was traded in at a valuation of $19,200, although, at the time he purchased it two months before, it was valued at $6,400; that certain payments made to him by respondent were for the purpose of equalizing their interests in the Montana land because of such valuation on the personal property, and he here seeks recovery of upwards of $22,000 as his share of the profits of the sale of the Lincoln county land, plus upwards of $14,000, his share of the profits derived from farming the land before it was sold, and, in the alternative, he contends here that, if a final settlement was in fact made, then there was a mutual mistake, in that the parties failed to take into account the personal property and the cash payment which went into the purchase of the Montana land, and therefore the settlement should be disregarded or set aside.

After a careful study of the record, we are abundantly satisfied that the findings of the trial court are supported by a preponderance of the evidence; that a final settlement was made, without any element of mistake entering therein, and that both parties are bound thereby. The judgment is affirmed.

Holcomb, C. J., Fullerton, Mount, and Bridges, JJ., concur.